# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYNN ANDRUS, | : | CIVIL ACTION NO. 3:13-cv-146 (RNC) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DOONEY & BOURKE, INC. and PETER DOONEY, | : | |
| | : | |
| Defendants. | : | JULY 11, 2014 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, Dooney & Bourke, Inc. (the "Company") and Peter Dooney (collectively, "Defendants" ), submit this Memorandum of Law in Support of Their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56 of the United States District Court for the District of Connecticut.

This case arises from the Company's decision in March of 2012 to terminate the employment of Plaintiff Lynn Andrus ("Plaintiff" or "Ms. Andrus"), who had worked for the Company for approximately twenty-five years.  As demonstrated by the undisputed material facts in this matter, and contrary to the allegations in Plaintiff's Amended Complaint, the Company's decision to terminate Ms. Andrus' employment as a sales representative was not based on her gender or age.  Rather, it was based on declining sales in some of the important accounts serviced by Plaintiff, her failure to regularly make in-person visits to those accounts, and the Company's decision to consolidate and restructure its sales force.

Plaintiff's Amended Complaint in this action sets forth the following claims:  (i) alleged failure to pay commissions in violation of Conn. Gen. Stat. Section 31-71a, *et seq*. (the

**Oral Argument Requested**
**Testimony Not Required**

"Connecticut Wage Statute"); (ii) alleged violation of the Equal Pay Act, 29 U.S.C. § 206, *et seq.*; (iii) alleged discrimination on the basis of sex/gender in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and Conn. Gen. Stat. § 46a-60(a)(1), *et seq.* (the "Connecticut Fair Employment Practices Act," or "CFEPA"); (iv) alleged age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* and CFEPA; and (v) alleged sexually hostile work environment in violation of CFEPA.

As discussed in more detail below, however, the undisputed material facts of this case demonstrate that Defendants are entitled to summary judgment in full on the following grounds: (1) Defendants had no obligation to pay Plaintiff any salary or commissions after the date her employment was terminated, and Plaintiff admitted at her deposition that Defendants do not owe her any additional commissions; (2) Plaintiff cannot establish a claim under the Equal Pay Act because she is unjustifiably comparing herself to independent sales representatives who are not employees of the Company, who do not receive a salary or employee benefits from the Company, and who, unlike Plaintiff,  run their own sales businesses and pay their own business expenses; (3) there is no evidence of gender discrimination and the Company terminated the services of a male independent sales representative at the same time that it terminated Plaintiff's employment; (4) there is no evidence of age discrimination, the individuals who made the decision to terminate Plaintiff's employment are older than she, and the independent sales representatives who took over Plaintiff's account responsibilities also are older than she; and (5) Plaintiff cannot establish a hostile work environment claim based on being invited to watch the movie "Borat" and a few alleged stray remarks regarding other employees that purportedly occurred many years prior to the termination of her employment.  Accordingly, based on the

-2-

undisputed facts and the applicable law set forth below, Defendants respectfully request that this Court enter summary judgment in their favor on each of Plaintiff's claims.

## FACTS

Defendants incorporate herein the facts more fully set forth in the accompanying Local Rule 56(a)(1) Statement of Undisputed Material Facts, as well as the supporting exhibits referenced therein, in support of their motion for summary judgment.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986) (quoting Fed. R. Civ. P. 56(c) (1986)). A genuine issue for trial exists only where there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A party opposing a summary judgment motion has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Conclusory statements, speculation, unsubstantiated allegations, or merely colorable evidence will not suffice. See Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); Woroski Nashua Corp., 31 F.3d 105, 109-10 (2d Cir. 1994).

This Court must grant summary judgment in Defendants' favor, therefore, unless Plaintiff can set forth "specific facts," supported by admissible evidence, showing that a genuine issue of material fact exists for trial; Plaintiff cannot rest on "mere allegations." Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) ("A defendant need not prove a negative when it

moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point

to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific

facts showing that there is a genuine issue for trial.'") (quoting  Fed. R. Civ. P. 56(e) (2001))

(citations omitted); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) (same);

James v. N.Y. Racing Ass'n, 233 F.3d 149 (2d Cir. 2000) (same); Schnabel v. Abramson, 232

F.3d 83, 85 (2d Cir. 2000) (accord).

## **ARGUMENT**

### I.   **Defendants Did Not Fail to Pay Plaintiff Any Commissions Due to Her.**

In order to establish a claim under the Connecticut Wage Statute "an employee [must]

show that the employer breached an obligation to pay wages that arises from an employer-

employee agreement."  Karavish v. Ceridian Corp., 2011 U.S. Dist. LEXIS 100230, *45 (D.

Conn. Sept. 6, 2011).[1]  Based on the undisputed record and Plaintiff's own admissions, Plaintiff

cannot prevail on her claim that Defendants failed to pay her commissions in violation of the

Connecticut Wage Statute.

#### A.   **Defendants Did Not Have Any Obligation to Pay Plaintiff Any Salary or Commissions After Her Employment Was Terminated.**

The undisputed facts in this case demonstrate that the Company terminated Plaintiff's

employment on March 14, 2012.  (Defs' Loc. R. 56(a)(1) Statement ¶ 34.)  Although the

Company had no legal obligation to provide Plaintiff with any severance pay, it recognized that

Plaintiff had been an employee for approximately twenty-five years and it decided to continue to

pay Plaintiff salary and commissions, and to provide her with health insurance and other

employee benefits, through June 30, 2012.  (Id. at ¶ 41.)  The Company did not require Plaintiff

---

[1] Copies of electronically-cited cases are attached hereto in an accompanying Appendix.

-4-

to sign a general release of claims, or to provide any other consideration, for this severance pay. (Id.)  Despite not providing any consideration for her severance pay, Plaintiff now claims that she legally is entitled to receive more commissions during her severance period.  Her claim is refuted, however, both by the applicable law and her own deposition testimony.

The Connecticut Wage Statute defines "wages" as "*compensation for labor or services rendered by an employee*, whether the amount is determined on a time, task, piece, commission or other basis of calculation."  Conn. Gen. Stat. § 31-71a(3) (emphasis added); see also Andersen v. Governor and Co. of the Bank, 2011 U.S. Dist. LEXIS 137045 (D. Conn. Nov. 30, 2011).  In the case at bar, the post-employment severance payments that the Company provided to Plaintiff were not for "labor or services rendered" and, therefore, were not "wages" under Connecticut law.  See, e.g., Andersen, 2011 U.S. Dist. LEXIS 137045, at *21-22 (noting the plaintiff's concession that "post-termination payments of his continued base salary and COBRA reimbursement do not constitute wages under the Statute"); Drybrough v. Acxiom Corp., 172 F. Supp. 2d 366, 371 (D. Conn. 2001) ("Severance pay is not wages because it is not 'compensation for labor or services rendered,' and because wages, unlike severance pay, cease when employment does.") (quoting McGowan v. Administrator, Unemployment Compensation Act, 153 Conn. 691 (1966)).  In addition, Plaintiff did not have any contractual right to receive any post-employment commissions because she did not sign a release agreement or provide any other consideration for such post-employment payments.  Hence, the post-employment commissions that she received were akin to a gift, not wages.

Because the Company did not have any legal obligation to provide Plaintiff with any severance payments, it is entitled to summary judgment on Plaintiff's wage claim.

-5-

**B.**      **The Company Paid Plaintiff All Commissions that She Earned on Orders Actually Shipped to Customers On or Before June 30, 2012.**

Moreover, even if Plaintiff had an alleged legal right to be paid post-employment commissions, she was paid all commissions that she earned through June 30, 2012. "In Connecticut, there is no such settled doctrine regarding the time at which an employee's rights to [her] wages vests and, in fact, we have concluded herein that our wage payment statutes expressly leave the timing of accrual to the determination of the wage agreement between the employer and employee." Mytych v. May Dep't Stores Co., 260 Conn. 152, 164-165 (2002). Here, Plaintiff's Connecticut Wage Statute claim is premised on her assertion that she is owed commissions for all orders that she booked prior to the termination of her employment. As Plaintiff admitted at her deposition, however, she did not earn a commission after an order was booked; she only earned the commission after the order actually was shipped to the customer. (Defs' Loc. R. 56(a)(1) Statement ¶¶ 11, 43.) Accordingly, she can only make a claim for commissions on orders that she booked <u>and</u> that the Company actually shipped to customers on or prior to June 30, 2012. The Company already has paid her all such commissions.

When the Company provided Plaintiff with severance pay from March 14, 2012 to June 30, 2012, its payments included commissions on all purchase orders that Plaintiff booked prior to the termination of her employment <u>and</u> that were shipped on or before June 30, 2012. (Defs' Loc. R. 56(a)(1) Statement ¶ 43.) Although the Company had no legal obligation to pay Plaintiff commissions on any orders that were shipped after the termination of her employment on March 14, 2012, it voluntarily paid her commissions on orders that she had booked and that were shipped through June 30, 2012. Plaintiff has no legal basis for seeking additional commissions based on orders shipped after June 30, 2012. See Mytych, 260 Conn. at 166 (upholding

-6-

dismissal of Connecticut Wage Statute claims and noting that "plaintiffs were paid all the wages they had earned as calculated according to the formula to which they specifically had agreed").

As Plaintiff acknowledged at her deposition, she did not earn a commission until an order that she booked actually was sent to the customer. The Company paid Plaintiff all such commissions on orders shipped through June 30, 2012, even though it had terminated Plaintiff's employment several months earlier, on March 14, 2012. Based on these undisputed facts, this Court should enter summary judgment in favor of Defendants on Count One of Plaintiff's Amended Complaint.

**C.      Plaintiff Admitted at Her Deposition That She Is Not Owed Any Additional Commissions.**

In addition to the foregoing legal analysis, Plaintiff admitted at her deposition that the Company does not owe her any additional commissions. At her deposition, Plaintiff was questioned as to her basis for alleging in her Amended Complaint that she was owed commissions in the amount of $44,159.30. Plaintiff admitted that in calculating this amount, she had failed to take into consideration numerous chargebacks that had been applied to commission calculations throughout her employment. Plaintiff admitted that when the accounts for which she received commissions imposed chargebacks on the Company that resulted in a reduction of net sales revenue, there always had been a corresponding reduction in her commissions. (Defs' Loc. R. 56(a)(1) Statement ¶¶ 46-47.) Such chargebacks arose from a variety of situations, including, but not limited to, the return of product from the retailer, markdowns in sale prices, shared advertising/marketing costs, and margin assistance. (Id.)

Plaintiff acknowledged at her deposition that the above-described chargebacks should have been included in her post-employment commission calculations. She also acknowledged

that if the chargebacks had been included, then she might not be owed any commissions from the Company.  (Id. at ¶ 48.)  Indeed, Plaintiff explicitly testified at her deposition as follows:

> Q:    Does Dooney & Bourke currently owe you any commissions?
>
> A:    No, they don't owe me any commissions.

(Id.)  Accordingly, Defendants are entitled to summary judgment on Plaintiff's Connecticut Wage Statute claim.

**D.    No Basis Exists for Plaintiff's Allegation of Individual Liability Against Peter Dooney Under the Wage Statute.**

In Count Two of her Amended Complaint, Plaintiff alleges a cause of action pursuant to the Connecticut Wage Statute directly against Peter Dooney as an individual.  In addition to the reasons set forth above, Mr. Dooney is entitled to summary judgment on Count Two because there is no evidence to support Plaintiff's assertion of individual liability under the Connecticut Wage Statute.  Mr. Dooney was not Plaintiff's employer (the Company was her employer), and Mr. Dooney was not involved in calculating or determining the amount of post-employment commissions paid to Plaintiff.

In Butler ex rel. Skidmore v. Hartford Tech. Inst., Inc., the Connecticut Supreme Court held that in order to be found individually liable under the Connecticut Wage Statute, "the individual [must be] [1] the ultimate responsible authority to set the hours of employment and to pay wages and [2] is the specific cause of the wage violation."  243 Conn. 454, 463-64 (1997).  Neither of those roles was applicable to Mr. Dooney.  As he testified at his deposition, Mr. Dooney focuses his efforts on designing the Company's products.  Commission payments are the responsibility of the Company's Vice-President of Finance, Philip Kinsley.  The undisputed facts in this case demonstrate that Mr. Kinsley informed Plaintiff that her employment was being terminated on March 14, 2012, told Plaintiff that the Company would pay her commissions on

-8-

orders shipped through June 30, 2012, and oversaw the payment of such commissions.  (Defs'
Loc. R. 56(a)(1) Statement 42.)

Accordingly, the Connecticut Wage Statute claim set forth in Count Two of Plaintiff's
Amended Complaint against Mr. Dooney as an individual must be dismissed.  See, e.g., Stearns
v. Willard J. Stearns & Sons, Inc., 2012 Conn. Super. LEXIS 1673 (Conn. Super. Ct. June 27,
2012) (upholding directed verdict in favor of individual defendants where they did not set
plaintiffs' hours of work and were not involved in paying wages); Maratea v. Taylor Freezer of
Conn., Inc., 2010 Conn. Super. LEXIS 663 (Conn. Super. Ct. Mar. 24, 2010) (finding no
individual liability for a wage claim and noting that Butler "involved an individual who
controlled virtually every aspect of the employee's work environment").

**II.    Plaintiff Cannot Establish a Claim Under the Equal Pay Act.**

In order to make out a prima facie case under the Equal Pay Act, Plaintiff must show that
(1) the employer paid different wages to employees of the opposite sex; (2) the jobs entailed
equal work requiring equal skill, effort and responsibility; and  (3) the jobs are performed under
similar working conditions.  Corning Glass Works v. Brennan, 417 U.S. 188 (1974);
Ryduchowski v. Port Auth., 203 F.3d 135, 142 (2d Cir. 2000).  Plaintiff cannot satisfy any of
these elements.  Additionally, even if Plaintiff could set forth a prima facie case, the Equal Pay
Act is not violated when a pay disparity is based on " . . .  (iii) a system which measures earnings
by quantity or quality of production; or (iv) a differential based on any other factor other than
sex."  29 U.S.C. § 206(d)(1) (2000); see also Ryduchowski, 203 F.3d at 142.

As a threshold matter, Plaintiff cannot prevail on her Equal Pay Act claim because she is
not comparing her compensation to the compensation of similarly situated employees.  As
Plaintiff acknowledged at her deposition, she was a salaried sales representative for the

-9-

Company.  She was paid a salary, plus commissions, and also received employee benefits including, but not limited to, health insurance, 401(k) retirement plan eligibility and business expense reimbursement.  (Defs' Loc. R. 56(a)(1) Statement ¶¶ 6, 9, 14.)  In contrast, the crux of Plaintiff's Equal Pay Act claim is that she did not receive the same commission rate as independent sales representatives who were treated as independent contractors and not as employees.  These independent contractors operated their own businesses, paid their own business expenses, retained and paid their own planners, analysts and merchandisers, and did not receive any salary or employee benefits from the Company.  (Id. at ¶¶ 52-60.)

At her deposition, Plaintiff identified approximately seven individuals whom she alleges were paid a higher commission rate than her in violation of the Equal Pay Act, including three women:  Sue Clifton, Leigh Sobotka, and Janice Fenton.  (Defs' Loc. R. 56(a)(1) Statement ¶ 64.)  Plaintiff acknowledged at her deposition that the Company paid both its male and female independent sales representatives at a higher commission rate than she received.  This admission alone undermines the entirety of Plaintiff's alleged prima facie case under the Equal Pay Act.  In addition, it also is undisputed that the independent sales representatives to whom Plaintiff compared herself actually differed from her in a number of material respects:

- Independent sales representatives generally own and operate their own businesses.

- Independent sales representatives do not receive any salary, vacation pay, health insurance, or other employment-related benefits from the Company.

- Independent sales representatives are paid on a commission-only basis.

- Independent sales representatives are paid through an IRS Form 1099, whereas Plaintiff was a W-2 employee.

- Independent sales representatives retain and pay planners and analysts to assist them.

- Independent sales representatives retain and pay merchandisers to visit stores and to seek favorable floor space and display conditions for Dooney & Bourke products.

-10-

- Some independent sales representatives spent several hundred thousand dollars annually on planners, analysts, and merchandisers.

- Independent sales representatives pay for their own travel expenses, including, but not limited to, air fare, rental cars, hotels, and meals.

- Independent sales representatives pay for their own office expenses, including, but not limited to, rent, insurance, and equipment such as computers, phones, and copiers.

- Plaintiff did not have to pay for her own merchandisers or travel and business expenses; all such expenses were reimbursed by Dooney & Bourke.

- Plaintiff admitted at her deposition that the individuals whom she alleges were paid a higher commission rate than she are independent contractors, who, unlike she, operated their own businesses, were paid on a commission basis only, were not employees of the Company, and did not receive any salary, health insurance, retirement plan eligibility, business expense reimbursement or other employee benefits from the Company.

- In general, the Company did pay its independent contractors, both male and female, a higher commission rate than it paid Plaintiff.  From approximately 2000 to mid-2008, the default commission rate for independent sales representatives was five percent (5%).  In mid-2008, the default commission rate was reduced to three and one-half percent (3.5%).  These default commission rates applied to both male and female independent sales representatives and were not based on gender.

- During the five years prior to the termination of Plaintiff's employment, the two independent sales representatives who generally received the highest commission payments from the Company on an annual basis were Sue Clifton (female) and Goodwyn & Goodwyn (jointly owned by a husband and wife).

(Defs' Loc. R. 56(a)(1) Statement ¶¶ 51-65.)  Based on the foregoing, Plaintiff cannot set forth a prima facie violation of the Equal Pay Act because she cannot show that her commission rate was different from the independent sales representatives based on her gender.[2]

---

[2] Several witnesses testified that in or about 1998, Plaintiff was offered the opportunity to become an independent sales representative, but that she declined it because she preferred the security of a salary and employee benefits.  Plaintiff testified that she neither was offered nor sought the opportunity to become an independent sales representative.  Because this issue is disputed and not material, Defendants do not rely on it in their instant motion.

-11-

Several federal courts have confronted this issue of pay differential between employees and independent contractors under the Equal Pay Act and comparable statutes.  Recently, a decision from the Southern District of Florida granted summary judgment to a defendant in a matter with analogous facts to the case at bar.  In Benjamin v. Holy Cross Hosp., Inc., the Court wrote that "[t]he success of plaintiff's suit under the [Equal Pay Act] rests on the comparison of his pay and job functions with those of persons whom he designates as 'comparators.'" Benjamin, 2013 U.S. Dist. LEXIS 45591 at *18 (S.D. Fla. Mar. 29, 2013).  In response to the employee-plaintiff's attempt to compare himself to an independent contractor, the Court stated:

> Ms. Tidwell [the comparator] was not a Holy Cross employee but instead was an independent contractor working on an as needed basis. She received no benefits from Holy Cross. In contrast, Plaintiff was a salaried full-time employee who worked forty hours a week and received full benefits. Based upon the record presented, Ms. Tidwell cannot support Plaintiff's prima facie case because she was not an employee of Plaintiff's employer, and as an independent contractor, she was not similarly situated.

Id. at *19.  Thus, because Ms. Andrus is not similarly situated to the independent contractors, both male and female, whom she complains received greater compensation than her, her Equal Pay Act claim must fail.  See also Taylor v. ADS, Inc., 327 F.3d 579, 581 (7th Cir. 2003) (district court properly granted summary judgment where employee compared herself to independent contractors); Ahern v. Shinseki, 2009 U.S. Dist. LEXIS 50214 (D.R.I. June 9, 2009) (holding that it was "beyond dispute that Plaintiffs, as employees, were not similarly situated to the [independent contractors]"); Barbour v. United Beechcraft, 1998 U.S. Dist. LEXIS 17854 (N.D. Ill. Nov. 10, 1998) (higher paid independent contractor and employee were not similarly situated and it was "impossible to compare the two"); Nowlin v. Lake City, 2012 U.S. Dist. LEXIS 32484 (D.S.C. Jan. 25, 2012) (independent contractor receiving higher hourly pay but no benefits not similarly situated to full-time employee receiving benefits).

-12-

Accordingly, Defendants are entitled to summary judgment on Plaintiff's Equal Pay Act Claim.

**III.    Defendants Did Not Discriminate Against Plaintiff on the Basis of Sex.**

      **A.    Plaintiff's Compensation Was Not Motivated By Her Gender.**

To prevail on her claim of sex discrimination under Title VII and/or the Connecticut Fair Employment Practices Act ("CFEPA"), Plaintiff must show that:  (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000); see also Craine v. Trinity College, 259 Conn. 625, 637 n.6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both."). Plaintiff's gender discrimination claim fails because she cannot establish the fourth requirement of the prima facie case:  no evidence exists showing "circumstances that would be sufficient to permit a *rational* finder of fact to infer a discriminatory motive" behind the Company's rationale for paying its employees in a different manner from its independent contractors.  See McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) (emphasis added).  In fact, the Company paid the higher commission rate both to its male and female independent sales representatives, which effectively negates Plaintiff's unsupported assertion of gender discrimination.  (Defs' Loc. R. 56(a)(1) Statement ¶¶ 63-65.)

Under the burden-shifting framework of McDonnell-Douglas, even if Plaintiff could demonstrate a prime facie case, which she cannot, the Company then would be obligated to proffer a non-discriminatory business rationale for its action.  To satisfy its burden of production, the employer need only introduce evidence which, taken as true, would permit the conclusion

that there was a nondiscriminatory reason for the unfavorable employment decision.  See, e.g., Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998).  Once the Company presents a non-discriminatory business reason for its action – namely, the significant differences in risk and expenses between an employee and an independent contractor – the burden shifts back to Plaintiff to produce sufficient evidence to persuade a reasonable trier of fact that the Company's "asserted justification is false."  Reeves, 530 U.S. at 148.  "A plaintiff in a discrimination case must do more than merely raise an issue of fact regarding the validity of the employer's proffered explanation."  Ofoedu v. St. Francis Hosp. & Med. Ctr., 2006 U.S. Dist. LEXIS 68704, at *65 (D. Conn. Sept. 13, 2006).  "[W]hether a prima facie case plus an employer's pretextual reason for [the employment action] is sufficient to overcome a motion for summary judgment depends on 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . .'"  Hutchinson v. Weiss, Peck & Greer, L.L.C., 2000 U.S. App. LEXIS 31863, at *7 (2d Cir. Dec. 13, 2000).  "The Plaintiff must produce not simply *some* evidence, but *sufficient* evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action."  Rider v. Town of Farmington, 162 F. Supp. 2d 45, 51 (D. Conn. 2001) (emphasis added) (citing Weinstock, 224 F.3d at 42).  "A neutral reason 'cannot be proved to be a "pretext for discrimination" unless it is shown both that the reason was false, *and that* discrimination was the reason.'"  Adams v. Yale-New Haven Hosp., 2012 U.S. Dist. LEXIS 136933, at *16-17 (D. Conn. Sept. 25, 2012) (emphasis added) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).  "It is not enough . . . to *dis*believe the employer; the

-14-

factfinder must *believe* the plaintiff's explanation of intentional discrimination." <u>Reeves</u>, 530

U.S. at 147 (citing <u>St. Mary's</u>, 509 U.S. at 519) (emphasis in original)).

The undisputed facts in this action do not support any inference of discrimination on the

basis of sex with respect to Plaintiff's compensation.  Plaintiff received a lower commission rate

not because she is a woman, but because she was an employee rather than an independent

contractor.  As an employee, she received certain benefits that the independent sales

representatives did not receive, such as a salary, health insurance, 401(k) retirement plan

eligibility, and business expense reimbursement.  (Defs' Loc. R. 56 (a)(1) Statement ¶¶ 6, 9, 14.)

Plaintiff also did not have to pay the expenses that were incurred by the independent sales

representatives, such as the cost of retaining planners, analysts, and merchandisers, as well as

office expenses and travel expenses.  In light of these significant differences, the Company had a

rational basis for paying Plaintiff a lower commission rate than its independent sales

representatives.  Moreover, the higher commission rate that was paid to independent sales

representatives was paid both to the male and female independent sales representatives.  (<u>Id.</u> at

¶ 63.)

Plaintiff's Title VII and CFEPA gender discrimination claims fail for the same reasons as

her Equal Pay Act claim.  The undisputed material facts demonstrate that Plaintiff's commission

rate was not based on her gender, but was based on the fact that she was a salaried employee

rather than an independent sales representative.  Accordingly, Defendants are entitled to

summary judgment on Plaintiff's gender discrimination claims.

-15-

**B.**     **The Termination of Plaintiff's Employment Was Not Motivated By Her
Gender.**

Plaintiff's gender also was not a motivating factor in the termination of her employment.

To the contrary, the undisputed evidence demonstrates that a male independent sales

representative, Ron Moholt, was terminated at the same time as Plaintiff due to declining sales at

an account that was serviced both by Plaintiff and Mr. Moholt (the Nordstrom account).  (Defs'

Loc. R. 56(a)(1) Statement ¶¶ 34-36.)  Plaintiff cannot make a prima facie showing of

discrimination with respect to the termination of her employment because the circumstances of

her termination do not indicate discriminatory treatment.  Where Mr. Moholt, a male, was

terminated on the same date and for several of the same reasons as Plaintiff, there simply is no

credible argument that would "permit a rational finder of fact to infer a discriminatory motive."

McLee, 109 F.3d at 135.

Even if Plaintiff could establish a prima facie claim, which she cannot, the Company has

proffered a legitimate, non-discriminatory business reason for its decision to terminate Plaintiff's

employment.  Both Peter Dooney and Philip Kinsley testified at their depositions that they

decided to terminate Plaintiff's and Mr. Moholt's services in order to assign a new team to the

Nordstrom account that was better aligned with Nordstrom's consolidation to a single buying

office.  (Defs' Loc. R. 56(a)(1) Statement ¶¶ 33-36.)  They also testified that they were

concerned about declining sales at Nordstrom, Plaintiff's failure to make in-person visits to the

Nordstrom buying office in Seattle, and Plaintiff's agreement to accept multiple returns of

product from Nordstrom without first securing corresponding new purchase orders.  (Defs' Loc.

R. 56(a)(1) Statement ¶¶ 21-32.)  In sum, Plaintiff's gender did not play any role in the

Company's decision to terminate her employment.

Accordingly, for all of the foregoing reasons, Defendants are entitled to summary judgment on Plaintiff's gender discrimination claims.

## IV.    Defendants Did Not Discriminate Against Plaintiff on the Basis of Age.

Defendants also are entitled to summary judgment on Plaintiff's age discrimination claim because they did not discriminate against Plaintiff based on her age and there is no evidence to suggest otherwise.  Plaintiff was approximately forty-seven years old when her employment was terminated.  The decision-makers regarding her termination, and most of the independent sales representatives, are older than Plaintiff.  The persons who decided to terminate Plaintiff's employment with the Company, Peter Dooney and Philip Kinsley, are both older than the Plaintiff.  (Defs' Loc. R. 56(a)(1) Statement ¶¶ 37-38.)  Accordingly, with respect to Plaintiff's age discrimination claim, Defendants are entitled to the "well-recognized inference against discrimination [that] exists where the person who participated in the allegedly adverse decision is also a member of the same protected class." Aceto v. Town of Bloomfield, 2006 U.S. Dist. LEXIS 32475 at *15 (D. Conn. May 19, 2006) (internal citation and quotation omitted).  Moreover, the independent sales representatives who became responsible for servicing most of Plaintiff's accounts – Bob Goodwyn and Jeff Mazzaro – are either older than or approximately the same age as Plaintiff.  (Defs' Loc. R. 56(a)(1) Statement ¶¶ 37, 39.)

In light of these undisputed material facts, Plaintiff cannot meet the burden of proof that a claimant must satisfy when alleging age discrimination.  In Gross v. FBL Fin. Servs., the United States Supreme Court held "that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.  The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced

-17-

72325839.4

some evidence that age was one motivating factor in that decision." <u>Gross</u>, 557 U.S. 167, 180 (2009); <u>see also</u> <u>Timbie v. Eli Lilly & Co.</u>, 429 Fed. Appx. 20, 22 n. 1 (2d Cir.2011) (noting that, even after <u>Gross</u>, "[c]laims of age discrimination under the CFEPA and the ADEA are subject to the same legal analysis").

For many of the same reasons as discussed above with respect to gender discrimination, there is no evidence to support Plaintiff's age discrimination claim.  To the contrary, Plaintiff's deposition testimony and the documentary evidence produced in the course of discovery show that:  (a) Plaintiff was not subjected to any age-related comments; (b) Plaintiff was not replaced by a younger employee; and (c) most of Dooney & Bourke's sales representatives are older than Plaintiff.  (Defs' Loc. R. 56(a)(1) Statement ¶¶ 37-40, 69-70.)  In addition, the Company terminated Plaintiff's employment for the legitimate, non-discriminatory business reasons summarized above in Section III(B).  Accordingly, Plaintiff's age discrimination claim is without merit, and Defendants are entitled to summary judgment.

**V.    Defendants Did Not Subject Plaintiff to a Hostile Work Environment.**

To establish a sexually hostile work environment claim, Plaintiff must show:  (1) that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; and (2) that a specific basis exists for imputing the objectionable conduct to the employer.  <u>Roundtree v. Securitas Sec. Servs.</u>, 2012 U.S. Dist. LEXIS 24785, *18 (D. Conn. Feb. 27, 2012) (internal citations and quotations omitted).  A hostile work environment plaintiff must establish not only that she personally found the workplace to be offensive, but that a reasonable person objectively would find it to be so offensive as to be abusive.  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person

-18-

would find hostile or abusive – is beyond Title VII's purview." Id. (internal citation and

quotations omitted) (also noting that CFEPA hostile work environment claims are governed by

the same standards applicable to Title VII). As the Court has stated:

> To satisfy the objective component of the test, the workplace in question must
> have been so permeated with discriminatory intimidation, ridicule, and insult that
> the terms and conditions of [the plaintiff's] employment were thereby altered. In
> assessing whether this threshold has been reached, courts examine the case-
> specific circumstances in their totality and evaluate the severity, frequency, and
> degree of the abuse (relevant factors include the frequency of the discriminatory
> conduct; its severity; whether it is physically threatening or humiliating, or a mere
> offensive utterance; and whether it unreasonably interferes with an employee's
> work performance). A court must also consider the extent to which the conduct
> occurred because of the plaintiff's sex.
>
> The Supreme Court has made it clear that conduct must be extreme to amount to a
> change in the terms and conditions of employment. Title VII is not a general
> civility code, and courts should filter out complaints attacking the ordinary
> tribulations of the workplace, such as the sporadic use of abusive language,
> gender-related jokes, and occasional teasing.

Id. at *19-20. Based on these factors, Defendants are entitled to summary judgment on

Plaintiff's hostile work environment claim.

In the case at bar, Plaintiff's allegations of offensive conduct are neither severe nor

pervasive. To the contrary, Plaintiff's allegations are trivial and infrequent. For instance,

Plaintiff alleges that she was offended when Mr. Dooney invited her and several other male and

female sales representatives to watch the movie "Borat." Plaintiff admits, however, that she only

watched about fifteen minutes of the movie before leaving and that her departure had no

consequences. She also claims that Mr. Dooney allegedly made a few stray comments about the

physical appearance of other female employees that purportedly occurred several years prior to

the termination of her employment. Indeed, the undisputed facts show that Plaintiff moved to

Maryland in or about 2002, subsequently worked out of her home, and had very limited contact

with Mr. Dooney and other Dooney & Bourke employees. (Defs' Loc. R. 56(a)(1) Statement

-19-

¶¶ 12-14, 41.)  Moreover, during her employment at the Company, Plaintiff never complained to Mr. Kinsley or any other management employee about sexual harassment or an alleged hostile work environment.  (Id. at ¶ 41.)..

The United States Supreme Court has emphasized "that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"  Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81 (1998) (citation omitted).  "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious)" will often not be sufficiently severe to constitute a hostile work environment.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale, 523 U.S. at 81) (internal citation omitted).  Here, even if the Court accepted each and every one of Plaintiff's sparse and intermittent allegations under this cause of action as true, they would not rise to the level of an actionable hostile work environment that could survive summary judgment.  See, e.g., Chenette v. Kenneth Cole Prods., 345 Fed. Appx. 615, 617 (2d Cir. 2009) (affirming summary judgment for defendant on hostile work environment claim where plaintiff alleged she was working in an environment "characterized by lewd, racial, and sexual comments and innuendos, slander, offensive physical contact, and other inappropriate behavior" where her co-workers made sexually charged jests and one co-worker kissed her on the lips while at work); Alfano v. Costello, 294 F.3d 365, 377-80 (2d Cir. 2002) (granting defendant summary judgment because twelve incidents, four that had "sexual overtones," over a span of five years were insufficient to create hostile work environment); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995) (in a seven-month period, nine sexually offensive incidents, including repeated references to plaintiff as a 'pretty girl,' grunting noises when she wore leather skirt, and

one episode of simulated masturbation did not alter the terms and conditions of employment as a matter of law).

Accordingly, for all of the foregoing reasons, Plaintiff's allegations are insufficient to support a hostile work environment claim, and Defendants are entitled to summary judgment on this claim.

## CONCLUSION

For all the foregoing reasons, this Court should grant Defendants' motion for summary judgment in its entirety and dismiss all claims in Plaintiff's Amended Complaint.

Respectfully submitted,

**DEFENDANTS: DOONEY AND BOURKE, INC. AND PETER DOONEY**

By:   /s/ Daniel L. Schwartz
      Daniel L. Schwartz (ct 09862)
      Day Pitney LLP
      One Canterbury Green
      Stamford, CT 06901
      Tel. (203) 977-7300
      Fax (203) 977-7301
      dlschwartz@daypitney.com

By: /s/ Thomas J. McAndrew
Thomas J. McAndrew, Esq.
Thomas J. McAndrew, Esq. & Associates
One Turks Head Place, Suite 205
Providence RI 02903
Telephone: (401) 455-0350
Facsimile: (401) 455-0882
tmcandrew@tjmcandrewlaw.com
*ADMITTED PRO HAC VICE*

Attorneys for Defendants

-21-

72325839.4

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 11, 2014, a copy of the Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone not registered to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

/s/ Daniel L. Schwartz
Daniel L. Schwartz

72325839.4