```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT
LYNN ANDRUS                      :
                                 :
     Plaintiff,                  :
                                 :
v.                               :    Case No. 3:13-cv-146(RNC)
                                 :
DOONEY & BOURKE, INC., ET AL.    :
                                 :
     Defendants.                 :
```

RULING AND ORDER

Plaintiff brings this action against her former employer alleging discrimination on the basis of sex in violation of Title VII and Conn. Gen. Stat. § 46a-60(a)(1), violations of the Equal Pay Act and failure to pay commissions in violation of Conn. Gen. Stat. § 31-71a.[1]  Defendants have moved for summary judgment. For the following reasons, the motion is granted in part and denied in part.

I.  Background

Plaintiff was employed for twenty-five years at Dooney & Bourke, a company that designs and retails high-end handbags. Defs.' Rule 56(a)(1) Statement ¶ 1–10.  She began as a receptionist and was promoted to a position in sales.  Id.  As a

---

[1]  Plaintiff's original complaint included claims that defendants discriminated against her on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 and permitted a sexually hostile work environment in violation of Conn. Gen. Stat. § 46a-60.  Compl. (ECF. No. 1). These claims have been withdrawn.

1

sales representative, she received an annual salary and health insurance and was eligible to participate in a 401(k) retirement plan.  Id. ¶ 9.  Dooney & Bourke also paid her travel and business expenses.  Id.  In or around 1999-2000, plaintiff began to receive a one-percent commission in addition to her annual salary and employee benefits.  Id. ¶ 10.  The commission was based on sales of merchandise shipped to customers.  Id. ¶ 11.  Independent sales representatives were paid a higher commission than employees, typically ranging from three-and-a-half percent to five percent.  Id. ¶ 63.  Independent sales representatives own and operate their own businesses and pay their own expenses.  Id. ¶ 62.  During the course of her employment, plaintiff never requested that she be treated as an independent sales representative rather than as a salaried employee.  Id. ¶ 68.

   In the late 2000s, more than a decade after plaintiff began working as a sales representative, many retailers who purchased handbags from the company began consolidating their buying operations.  Id. ¶¶ 15-20.  As a result, some retailers began purchasing less from Dooney & Bourke.  Id. ¶¶ 21-23.  Dooney & Bourke's annual sales at Nordstrom, one of plaintiff's accounts, declined from approximately $9,000,000 to less than $4,000,000.  Id. ¶ 23.  Dooney & Bourke's annual sales at Bloomingdales, another of plaintiff's accounts, also declined.  Id. ¶¶ 21-22.

In response, Dooney & Bourke decided to consolidate and restructure its sales force. Id. ¶¶ 19-20.

Plaintiff's employment was terminated on March 14, 2012. Id. ¶ 34. Ron Moholt, an independent sales representatives who had worked with plaintiff on the Nordstrom account for many years, was terminated the same day. Id. ¶ 35. Following plaintiff's termination, Dooney & Bourke continued paying plaintiff her salary and benefits through June 30, 2012. Id. ¶ 42.

II. Discussion

A. Discrimination Claims

Plaintiff alleges sex discrimination in connection with the termination of her employment and her compensation. Second Am. Compl. (ECF. No. 92). Her discrimination claims are analyzed using a burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Plaintiff has the initial burden of presenting a prima facie case, which requires her to show that 1) she is a member of a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination. The burden then shifts to the defendant to give a legitimate, nondiscriminatory reason for its action. After such a reason is given, it becomes the plaintiff's burden to prove that the reason is not the true or

only reason for the challenged action and that the defendant's decision was motivated by discrimination.  See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) ("[O]nce the [employer] has made a showing of a neutral reason for the complained of action, 'to defeat summary judgment . . . the [employee's] admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the [employer's] employment decision was more likely than not based in whole or in part on discrimination.'" (quoting Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997))).

Compensation

With regard to the compensation claim, defendants contend that plaintiff's prima facie case fails at the fourth step in that the relevant circumstances do not support an inference of discrimination.  They argue that plaintiff received a lower commission than some men, not because she is a woman, but because she was a salaried employee rather than an independent sales representative.  I agree that the record does not support an inference of discrimination with regard to plaintiff's compensation.

Plaintiff argues that the independent sales representatives were similarly situated to her because they were misclassified as employees.  Pl.'s Memo. (ECF. No. 84) at 30-33.  The Second Circuit recognizes that an independent contractor may in fact be

an employee.  See Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1008 (2d Cir. 1991).  In assessing misclassification, courts look to an employer's control over the individual.  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).[2]  Plaintiff points to evidence reflecting Dooney & Bourke's control over its independent sales representatives.  In Peter Dooney's deposition, he stated that the independent sales representatives "report" to Mr. Kinsey.  Ex C. to Pl.'s Rule 56(a)(1) Statement (ECF. No. 85-3) at 35.  Some of the independent sales representatives have

---

[2] Plaintiff advocates the "economic realities" test whereas defendants argue in favor of the "ABC test."  These two tests, though styled differently, both concern the degree and amount of control an employer has over an individual.

The factors considered under the "economic realities" test include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Herman, 172 F.3d at 139 (citing Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)); see also Rutherford Food Corp. V. McComb, 331 U.S. 722, 730 (1947) (whether an employer-employee relationship exists does not depend on isolated factors but rather "upon the circumstances of the whole activity").

Similarly, the factors considered under the "ABC test" are whether: "(A) the individual performing the services has been and will continue to be free from any control or direction over the performance of his services both under his contract and in fact; and (B) the service is either outside the usual course of business for which it is performed or the service is performed outside of all the places of business of the enterprise for which it is performed; and (C) the individual performing the service is customarily engaged in an independently established trade, occupation, profession or business of the same nature."  F.A.S. Int'l, Inc. v. Reilly, 179 Conn. 507, 511-12 (1980).

5

titles.  For example, Mr. Mazzaro, an independent sales representatives, holds himself out as the director of wholesale operations.  Ex. I to Def.'s Memo (ECF No. 85-9) at 46-47.  He testified that Dooney & Bourke has sometimes paid his travel expenses, and provided him with an email account and IT support.  Id. at 30, 103–04, 120.  Moreover, as plaintiff points out, Ron Moholt has sued Dooney & Bourke claiming that he should have been treated as an employee rather than an independent contractor.  Ex. D to Defs.' Memo (ECF No. 85-4) at 5.

Whether the independent sales representatives were misclassified as employees is not dispositive.  The key question is whether the independent sales representatives were similarly situated to plaintiff.  That is, whether the two positions were "'substantially equal' in skill, effort, and responsibility," Downes v. JP Morgan Chase & Co., No. 03 CIV. 8991 GEL MHD, 2006 WL 785278, at *24 (S.D.N.Y. Mar. 21, 2006) report and recommendation adopted sub nom. Downes v. J.P. Morgan & Chase & Co., No. 03 CIV. 8991 (GEL), 2006 WL 1233939 (S.D.N.Y. May 8, 2006) (quoting Lavin-McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir. 2001)), as well as in compensation structure.  For example, in Nowlin v. Lake City, No. CIV.A. 4:10-01857, 2012 WL 831498 (D.S.C. Jan. 25, 2012) report and recommendation adopted, No. CIV.A. 4:10-01857, 2012 WL 831492 (D.S.C. Mar. 12, 2012), the plaintiff argued that she was similarly situated to an

independent contractor.  Id. at *10.  The court disagreed, pointing out that the plaintiff was salaried, worked full-time and received benefits whereas the independent contractor worked five to fifteen hours a month and received no benefits.  See id. ("Based upon the record presented, Plaintiff and [the independent contractor] are not similarly situated and, thus, Plaintiff fails to establish a *prima facie* case of discrimination.").  Similarly, the plaintiffs in Ahern v. Shinseki, No. 05-117-ML, 2009 WL 1615402 (D.R.I. June 9, 2009) aff'd, 629 F.3d 49 (1st Cir. 2010) also sought to compare themselves to independent contractors.  Id. at *2.  The plaintiffs "enjoyed fringe benefits, including paid vacation time, health insurance and retirement benefits" whereas "the higher paid contractor technologists were self-employed, with no rights under the federal personnel system, no fringe benefits and they served only for temporary contract terms."  Id.  Like in Nowlin, the court found that the plaintiffs' claim was "fatally flawed" because it was "beyond dispute that Plaintiffs, as employees, were not similarly situated to the contract technologists."  Id.

The record shows that independent sales representatives and employees at Dooney & Bourke performed the same "common core" of tasks, Brobst v. Columbus Servs., Int'l, 761 F.2d 148, 156 (3d Cir. 1985), in that they both sold handbags to retailers.  However, their responsibilities were different.  The independent

sales representatives were responsible for scheduling their own meetings with department store buyers and determining the agenda for the meetings. Defs.' Rule 56(a)(1) Statement (ECF. No. 76) ¶¶ 51-60. They also retained their own merchandisers to monitor and assist with in-store displays of Dooney & Bourke's products. Id. In essence, the independent sales representatives were responsible for running their own show. Employees, on the other hand, worked at the direction of Dooney & Bourke.

The record also establishes that independent sales representatives and employees were not similarly situated in terms of compensation structure. Employees received a lower commission than independent sales representatives but they also received a salary, health insurance and retirement benefits and their expenses were paid. Plaintiff never asked to be treated as an independent sales representative rather than as a salaried employee. Id. ¶ 68.

Like the plaintiffs in Nowlin and Ahern, who were not similarly situated to independent contractors, the record in this case shows that plaintiff was not similarly situated to the independent sales representatives at Dooney & Bourke.[3] Moreover,

---

[3] With respect to her Equal Pay Act claim, plaintiff makes the same argument that the independent sales representatives are proper comparators. Pl.'s Opp. (ECF. No. 84) at 24-29. She also argues that even if the independent sales representatives are not proper comparators, her claim should move forward because a male employee, Ian Ray, made more than she did. Id. at 30. She then explains why Mr. Ray is a proper comparator. Id. Plaintiff does

the record shows that it was not just the men working as independent sales representatives who received higher commissions. Rather, both the male and female independent sales representatives were paid higher commission rates than employees. Id. ¶ 63.[4] Accordingly, I conclude that plaintiff has failed to make out a prima facie case that her compensation was lower because of her gender. See Barbour v. United Beechcraft, Inc., No. 96 C 50251, 1998 WL 803417, at *6 (N.D. Ill. Nov. 10, 1998) (higher paid independent contractor and employee were not similarly situated and it was "impossible to compare the two").[5]

---

not advocate her "even if" argument with respect to her discrimination claim, but if she did I would find that Mr. Ray is not a proper comparator for the same reasons set forth in the discussion on the Equal Pay Claim. See II.B.

[4] Plaintiff's deposition identifies that three of the seven independent sales representatives who were paid a higher commission rate were women: Ms. Fenton, Ms. Clifton and Ms. Sobotka. Plaintiff attempts to distinguish Ms. Fenton because she is part of a married couple and therefore "cannot be considered as a female employee." Pl.'s Opp. (ECF. No. 84) at 25. Regardless of Ms. Fenton's marital status, she is still a female independent sales representative and she receives the same commission rate as the male independent sales representatives. See Ex. K to Pl.'s Rule 56(a)(1) Statement (ECF. No. 85-11). Plaintiff also attempts to distinguish Ms. Clifton as an improper comparator because she sells through the QVC television network. This ignores the fact that prior to selling through QVC, Ms. Clifton sold the company's products to a number of different department stores and received the same commission rate as the other independent sales representatives. See Exs. K and L to Defs.' Rule 56(a)(1) Statement (ECF. Nos. 76-11 and 76-12).

[5] Even if plaintiff could satisfy her prima facie case with respect to her lower commission rate, she has failed to effectively rebut defendants' explanation that she got a lower commission because she was an employee who received a salary and

Termination

Defendants contend that plaintiff has also failed to satisfy the fourth prong of a prima facie case with regard to her termination. They state that she was let go, not because she is a woman, but because sales had declined significantly. Plaintiff offers some evidence that her termination occurred in circumstances permitting an inference of discrimination and I assume she has satisfied her de minimis burden in that regard. However, her claim fails as a matter of law because defendants have offered legitimate reasons for the termination and plaintiff fails to provide evidence supporting a finding of discrimination.

Plaintiff does not dispute that the sales on the Nordstrom account, one of her primary accounts, had declined substantially in the years leading up to her termination. Defs.' Local Rule 56(a)(1) Statement (ECF. No. 76) ¶ 23. Defendants offer this decline in sales as their reason for letting her go. Defs.' Memo. (ECF. No. 77) at 16-18. The record shows that Mr. Kinsey informed plaintiff at her termination that the company had reviewed the Nordstrom account and had decided to consolidate it in an effort to reduce costs and increase efficiencies. Ex. F to Def.'s Memo. (ECF. No. 76-6). In addition, plaintiff does not

---

benefits, in contrast with the independent sales representatives who received neither.

dispute that her colleague on the account, a male, was let go on the same day she was. Defs.' Local Rule 56(a)(1) Statement (ECF. No. 76) ¶ 34. The fact that two persons on the Nordstrom account were terminated together provides further support that plaintiff's termination was indeed because of the declining Nordstrom sales.

In addition, defendants offer other reasons for plaintiff's termination. Defs.' Memo. (ECF. No. 77) at 16-18. They state that Mr. Dooney was concerned about plaintiff not making enough in-person visits to her accounts, as well as plaintiff's agreement to accept multiple returns of product from Nordstrom without first securing corresponding purchase orders. Defs.' Local Rule 56(a)(1) Statement (ECF. No. 76) ¶ 31-32. Plaintiff's argument that the restructuring of the Nordstrom account and the alleged returns issue are pretextual is unavailing.

Plaintiff argues that the company now purchases about the same amount from Nordstrom as it did in 2012 and that the returns issue was concocted after-the-fact because it was not given as a reason during her termination. Pl.'s Opp. (ECF. No. 84) at 32. Plaintiff cannot overcome the weight of the evidence as to the declining sales at Nordstrom. See Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000) (to defeat summary judgment plaintiff must "adduce admissible evidence that would be

sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation."). She is advocating a view of the Nordstrom account with the benefit of hindsight. At the time of Dooney & Bourke's decision, sales were significantly lower than they had been. Defs.' Rule 56(a)(1) Statement ¶ 23. The fact that they rebounded does not alter the fact that they had decreased and the company aptly responded to this decrease by realigning its approach. As for the returns, plaintiff argues that she was not told of this issue at her termination and thus it "reeks of an explanation that was made after the fact." Pl.'s Opp. (ECF. No. 84) at 32. Though plaintiff was not told of this, the record shows that defendants did not fabricate this explanation. Defendants were disappointed that plaintiff had accepted these returns and communicated among themselves about this prior to plaintiff's termination. Defs.' Rule 56(a)(1) Statement ¶ 29.

   B. <u>Equal Pay</u>

The Equal Pay Act prevents an employer from "pay[ing] lower wages to an employee of one gender than to substantially equivalent employees of the opposite gender in similar circumstances." <u>Pollis v. New School for Social Research</u>, 132 F.3d 115, 118 (2d Cir. 1997). To make out a prima facie case, a plaintiff must show that: (1) the employer paid different wages to employees of the opposite sex; (2) the jobs entailed equal

work requiring equal skill, effort and responsibility; and (3) the jobs are performed under similar working conditions. Ryduchowski v. Port Auth., 203 F.3d 135, 142 (2d Cir. 2000).  The Equal Pay Act is not violated when a pay disparity is based on "a system which measures earnings by quantity or quality of production" or "a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1); see also Ryduchowski, 203 F.3d at 143.

Defendants argue that plaintiff is not comparing her compensation to the compensation of similarly situated employees.  Defs.' Memo. (ECF. No. 77) at 9–13.  The plaintiff, defendants argue, is a salaried employee.  Id.  Those she is comparing herself to are independent contractors who operate their own businesses, pay their own business expenses and do not receive any salary or benefits from Dooney & Bourke.  Id.  They are not the same thing, defendants assert.  Id.

Claims for wage discrimination under the Equal Pay Act and discrimination under Title VII are similar in that both require a plaintiff to establish that she was treated differently than those similarly situated.[6]  See Tomka v. Seiler, 66 F.3d 1295,

---

[6] Unlike a discrimination claim, however, an Equal Pay Act claim "does not require the plaintiff to make a showing of discriminatory intent."  Downes v. JP Morgan Chase & Co., No. 03 CIV. 8991 GEL MHD, 2006 WL 785278, at *16 (S.D.N.Y. Mar. 21, 2006) report and recommendation adopted sub nom. Downes v. J.P. Morgan Chase & Co., No. 03 CIV. 8991 (GEL), 2006 WL 1233939 (S.D.N.Y. May 8, 2006).

13

1312 (2d Cir. 1995) ("A claim of unequal pay for equal work under Title VII . . . is generally analyzed under the same standards used in an [Equal Pay Act] claim."). As with a Title VII plaintiff, "a[n Equal Pay Act] plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal'" in skill, effort, and responsibility. Id. This "substantially equal" requirement "is designed to ensure that employers do not incur liability for legitimate wage disparities owing to differences." Drury v. Waterfront Media, Inc., No. 05 CIV. 10646 (JSR), 2007 WL 737486, at *3 (S.D.N.Y. Mar. 8, 2007) (citing Strag v. Bd. of Trustees, 55 F.3d 943, 950 (4th Cir. 1995)). Because plaintiff has not adduced sufficient evidence from which a reasonable juror could find that the independent sales representatives are similarly situated comparators, see supra II.A, I agree with defendants that plaintiff has failed to make out her prima facie case of wage discrimination.

    Plaintiff argues that even if defendants are correct and the independent sales representatives are not proper comparators, she can still make out her prima facie case because the one male-classified employee, Ian Ray, always made more than her in commissions. Pl.'s Opp. (ECF. No. 84) at 30. Although a sole comparator can suffice under the Equal Pay Act, the sole comparator must be similarly situated. See Lavin-McEleney, 239

14

F.3d at 481 (permitting Equal Pay Act claim to move forward to jury when there was "sufficient evidence for a reasonable juror to have found that [sole comparator]'s position was substantially equal to plaintiff's [position]").  Again, plaintiff's comparison is unavailing.  The record shows that Mr. Ray had a significantly different job than that of plaintiff.  Though Mr. Ray was an employee and not an independent sales representative, he was a product designer and developer who both originated new customers for Dooney & Bourke and developed products for those customers.  See Ex. C to Defs.' Reply (ECF. No. 98-3) at 46-48.  As Mr. Dooney testified, Mr. Ray was a "one-off.  He designs [handbags].  He travels to China.  He makes them.  He is – he's kind of a one-man total business.  He works in a technical function of making things, and everything is a one-off.  It's not designed by the company or anything.  They're single specified products."  Id. at 47.  Plaintiff, on the other hand, did not have any design responsibilities, nor did she develop new customer relationships.  See Ex. A to Defs.' Reply (ECF. No. 98-1).  In short, plaintiff and Mr. Ray did not perform "equal work" requiring "equal skill, effort and responsibility."  Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974), and thus Mr. Ray is not a similarly situated comparator.

    C. Failure to Pay Commission

    Connecticut's wage statute reads as follows: "When any

15

employer fails to pay an employee wages . . . such employee . . . shall recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . ."  Conn. Gen. Stat. § 31–72.  The statute defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71a(3).  Plaintiff asserts that she is due commissions arising after the termination of her employment and that such commissions are "wages" rather than "severance."  She also seeks to hold Mr. Dooney individually liable under the wage statute.

Under the wage statute, commissions - but not severance - are included as "wages."  See Conn. Gen. Stat. § 31–71a(3); see also Drybrough v. Acxiom Corp., 172 F. Supp. 2d 366, 371 (D. Conn. 2001) ("Severance pay is not a wages because it is not 'compensation for labor or services rendered.'" (quoting Justin v. AMA, Ltd., No. CV92 29 33 60, 1993 WL 213707, at *2 (Conn. Super. Ct. June 8, 1993))).  Here, the parties agree and the record reflects that commissions were paid at Dooney & Bourke once an order was actually shipped to a customer.

There remains, however, a factual dispute as to whether plaintiff has been paid all commissions owed to her under the statute.  Plaintiff is entitled to all commissions on orders that

were actually shipped to customers on or before March 14, 2012, the date her employment was terminated.[7] Defendants argue they owe plaintiff no more commissions. Defs.' Memo. (ECF. No. 77) at 7. Plaintiff states that she is owed more than $73.77, although she makes two contradictory statements in her deposition. First, she states that she was owed $44,159.30 in commissions. Ex. A. to Pl.'s Rule 56(a)(1) Statement (ECF. No. 85-1) Pl.'s Depo. at 136. On further questioning, she notes that she did not apply chargebacks to these commission payments. Id. at 150-56. She then testified that Dooney & Bourke *does not* owe her any commissions.[8] Id. at 156. Later, she states that they *do* owe her commissions.[9] Id. at 234. The affidavit of Robert Andrus, the company analyst/planner, also avers that plaintiff is owed $13,829.62 in commissions. Ex. H to Pl.'s Rule 56(a)(1)

---

[7] Defendants voluntarily paid plaintiff for all commissions on orders that she had booked and that were shipped through June 30, 2012. These commissions, earned after plaintiff's termination, fall outside the scope of the statute and thus plaintiff has no statutory right to contest the amount of these payments.

[8] "Q: Does Dooney and Bourke currently owe you any commissions?
A: No, they don't owe me any commissions."  Ex. A to Pl.'s Rule 56(a)(1) Statement (ECF. No. 85-1) at 156.

[9] "Q: Do you believe that Dooney & Bourke currently owes you commissions.
A: Yes, I thought there was a 12 or $13,000 discrepancy . . . .
Q: You currently believe that Dooney & Bourke owes you 12 or $13,000 in commission?
A: Yes."  Ex A. to Pl.'s Rule 56(a)(1) Statement (ECF. No. 85-1) at 234.

17

Statement (ECF. No. 85-8 ¶ 9).  Thus, there remains a factual dispute as to whether or not plaintiff is still owed commissions on orders booked and shipped prior to her termination on March 14, 2012.

As to Mr. Dooney, an individual employer can be held liable for unpaid wages if he or she is "the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation."  <u>Butler v. Hartford Tech. Inst., Inc.</u>, 243 Conn. 454, 463-64 (1997).  In <u>Butler</u>, the Connecticut Supreme Court deemed that the trial court properly held the defendant liable because he was president and treasurer and the person in control of the institute, he reviewed all employee time cards before authorizing the payment of wages, and the plaintiff reported directly to him and was closely supervised by him.  <u>Id.</u> at 458; <u>see also</u> <u>Dehua Lin v. Brennan</u>, 3:07-CV-1658 CFD, 2011 WL 5570779, at *4 (D. Conn. Nov. 15, 2011) ("[t]here is no genuine question of fact that the Plaintiffs were employed by the Tavern or that Brennan and Reynolds were responsible for the employment and salary-setting for the Plaintiffs.").

Based on the record, Mr. Dooney cannot be held individually liable under the wage statute.  Though Mr. Dooney was involved in the decisions of the company and admits he was involved in the

decision to terminate plaintiff,[10] there is no evidence that Mr. Dooney was the "specific cause" of plaintiff not receiving her commissions.  See Evans v. Tiger Claw, Inc., 141 Conn. App. 110, 124 (2013) (reversing trial court when there was "no testimony or evidence that any of the individual defendants was solely responsible for the payment of the plaintiff's wages or that any one of them was the specific cause of a wage violation"); Stearns v. Willard J. Stearns & Sons, Inc., No. TTDCV106001091S, 2012 WL 3064735, at *2 (Conn. Super. Ct. June 27, 2012) (upholding directed verdict for defendants when plaintiffs did not present any evidence showing that defendants "had any responsibility to set the plaintiffs' hours of employment" or that they "had responsibility for paying the plaintiffs' wages").  Unlike the defendant in Butler, 243 Conn at 463-64, Mr. Dooney is not responsible for commission payments.  The commission payments are responsibility of Mr. Kinsey, who is also the individual who informed plaintiff that her employment was being terminated.  Cf. Maratea v. Taylor Freezer of Conn., Inc., No. CV084010421S, 2010 WL 1544820, at *5 (Conn. Super. Ct. March 24, 2010) (describing the defendant in Butler as "controll[ing] virtually every aspect of the employee's work environment").  Summary judgment will thus

---

[10] "Q: Were you involved in the decision to terminate Ms. Andrus?
A: Yes . . . . At the end of the day, although it was a difficult decision . . . we decided to make the change."  Ex. C to Pl.'s Rule 56(a)(1) Statement (ECF. No. 85-3) at 74-75.

entered for Mr. Dooney on this claim, but not for Dooney & Bourke.

III. Conclusion

Accordingly, defendants' motion for summary judgment is granted in part and denied in part. The motion is granted as to the discrimination claims, the Equal Pay Act claims and the failure to pay commission claim with respect to Mr. Dooney (Counts 2, 3, 4 and 5). The motion is denied as to the failure to pay commission claim with respect to Dooney & Bourke.

So ordered this 30th day of September, 2015.

          /s/RNC
    Robert N. Chatigny
United States District Judge